ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **OFICINA DE ÉTICA GUBERNAMENTAL**<br>Recurrida<br><br>v.<br><br>**NOELIA MELÉNDEZ CRUZ**<br>Recurrente | KLRA202400602 | **REVISIÓN** procedente de la **Oficina de Ética Gubernamental**<br><br>Caso Núm.: **22-01**<br><br>Sobre: Violación al Inciso (G) del Artículo 4.2 e Inciso © del Artículo 4.3 de la Ley de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2013 según enmendada |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 19 de diciembre de 2024.

Comparece ante nos, mediante *Recurso de Revisión Administrativa*, la señora Noelia Meléndez Cruz (Sra. Meléndez Cruz, Querellada o Recurrente) y nos solicita que revoquemos la *Resolución* emitida el 19 de agosto de 2024 por la Oficina de Ética Gubernamental (OEG).[1] Mediante la *Resolución*, la OEG acogió el informe de la Oficial Examinadora[2] y le impuso una multa de $9,000.00 a la Sra. Meléndez Cruz por incurrir en tres (3) violaciones al Artículo 4.2 (g) de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, 3 LPRA sec. 1857a (LOOEG).

---

[1] Apéndice de *Recurso de Revisión Judicial*, Anejo XXIV, págs. 533-536. Notificada y archivada en autos el 20 de agosto de 2024.
[2] *Íd.*, págs. 537-573.

Número Identificador
SEN2024 _____

Por los fundamentos que discutiremos a continuación, confirmamos la *Resolución* de la OEG.

**I.**

El 9 de julio de 2021, la OEG presentó una *Querella* en contra de la Sra. Meléndez Cruz.[3] Según la prueba presentada, la Querellada había fungido como Directora Interina en el Departamento de Finanzas del Municipio de Santa Isabel (Municipio) entre el 3 de marzo de 2013 y el 30 de junio de 2017,[4] y como Directora en propiedad del Departamento de Finanzas entre el 1 de julio de 2017 hasta el 28 de febrero de 2018. El *Plan de Clasificación para los Empleados en el Servicio de Confianza* describe las funciones del puesto como:

> El trabajo en esta clase es de gran complejidad y responsabilidad que conlleva la **planificación, organización, dirección, supervisión y evaluación de las actividades y operaciones financieras del Municipio**. **El empleado(a) participa en la formulación de la política pública relacionada con su área de trabajo y es responsable por su implantación**. El(la) empleado(a) trabaja bajo la dirección general del Alcalde del Municipio. **Ejerce un alto grado de iniciativa y criterio propio en el desempeño de sus funciones guiado por las normas, leyes y reglamentos aplicables**. Su trabajo se evalúa a través de informes que rinde, en reuniones con el(la) supervisor(a) y por los resultados obtenidos.[5]

Conforme a la descripción del puesto que ocupó, la Sra. Meléndez Cruz era una servidora pública, según definido por el Artículo 1.2 (hh) de la LOOEG, *supra.* Según alegó la OEG, durante el periodo que la Querellada ocupó un puesto como servidora pública en el Municipio de Santa Isabel, el Municipio tuvo relaciones contractuales con parientes de esta. Los parientes son:

(1) El señor Santos Meléndez Cordero, padre de la Querellada,[6] quien fue contratado por el Municipio como asesor de proyectos de construcción y supervisor de

---

[3] *Íd.*, Anejo I, págs. 1-9.
[4] *Íd.*, Anejo XVII, págs. 122-123.
[5] *Íd.*, pág. 124. (Énfasis nuestro).
[6] *Íd.*, Anejo XVII, pág. 131.

proyectos. El Municipio también contrató con sus compañías, SEM & Associates, PSC,[7] SEM Design Group, PSC[8] y SEM A/E Design and Management, PSC,[9] para la realización de planos y supervisión de proyectos.[10]

(2) El señor Eduardo Meléndez Cruz, hermano de la Querellada[11] y dueño de las compañías EMC Design & Management, PSC[12] y A/E Design Group, PSC.[13] Dichas compañías fueron contratadas por el Municipio para consultoría, inspección y supervisión de proyectos.[14]

(3) El señor Reinaldo Meléndez Cordero, tío de la Querellada[15] y dueño de las compañías CPA Advisors Group, PSC[16] y Financial Advisors, LLC.[17] Dichas compañías fueron contratadas para proveer asesoría financiera y de contabilidad al Municipio.

La OEG alegó que la Sra. Meléndez Cruz, "a sabiendas de lo anterior, y durante la vigencia de los contratos otorgados con sus parientes; intervino, firmó, aprobó y recomendó el otorgamiento de documentos relacionados a la relación contractual que sostenían éstos con el Municipio".[18] Aunque la Sra. Meléndez Cruz alegó que el 4 de marzo de 2024, le presentó al entonces alcalde del Municipio de Santa Isabel, Enrique H. Questell Alvarado (Sr. Questell Alvarado), una carta en la que le informó de sus deseos de inhibirse en los casos relacionados a contrataciones municipales con los señores Santos y Reinaldo Meléndez Cordero, por razón de parentesco, la OEG presentó una *Certificación Negativa* de la entidad

---

[7] *Íd.*, págs. 135-136.
[8] *Íd.*, págs. 137-138.
[9] *Íd.*, págs. 139-141.
[10] *Íd.*, págs. 158-164.
[11] *Íd.*, pág. 132.
[12] *Íd.*, págs. 142-143.
[13] *Íd.*, págs. 144-145.
[14] *Íd.*, págs. 158-164.
[15] *Íd.*, pág. 134.
[16] *Íd.*, págs. 151-152.
[17] *Íd.*, págs. 155-156.
[18] *Íd.*, Anejo I, pág. 4.

supervisora de que haya recibido alguna copia de dicha carta.[19] La OEG señaló que la Querellada no contó con una dispensa, ni solicitó evaluación alguna por parte de la OEG para delimitar sus acciones.[20] Tampoco se inhibió de participar en las relaciones contractuales entre sus parientes y el Municipio.[21] Por esto, la OEG alegó que la Sra. Meléndez Cruz infringió los Artículos 4.2 (g) y 4.3 (c) de la LOOEG, *supra*, que disponen:

### Artículo 4.2 (g)-

Un servidor público no puede intervenir, directa o indirectamente, en cualquier asunto en el que él, tenga un conflicto de intereses que resulte en la obtención de un beneficio para él. Tampoco un servidor público puede intervenir directa o indirectamente, en cualquier asunto en el que un miembro de su unidad familiar, su pariente, su socio o una persona que comparta su residencia, tenga un conflicto de intereses que resulte en la obtención de un beneficio para cualquiera de ellos.

Cuando se trate de una de las relaciones antes mencionadas, que haya terminado durante los dos años anteriores al nombramiento del servidor público, éste no podrá intervenir, directa o indirectamente, en cualquier asunto relacionado con éstos hasta pasados dos (2) años desde su nombramiento.

La prohibición permanece vigente mientras exista un vínculo de beneficio para el servidor público. Una vez termine el vínculo de beneficio, el servidor público no puede intervenir, directa o indirectamente, en el referido asunto hasta pasados dos (2) años.

### Artículo 4.3 (c)-

Un servidor público, que está autorizado para contratar o que está facultado para aprobar o recomendar el otorgamiento de un contrato en nombre de la agencia para la cual trabaja, no puede intervenir o participar en el perfeccionamiento de un contrato con una persona privada o negocio en el que él, un miembro de su unidad familiar, su pariente, su socio o una persona que comparte su residencia tenga o haya tenido, directa o indirectamente, un interés pecuniario durante los últimos dos (2) años anteriores a su nombramiento.

Cuando se trate de una de las relaciones antes mencionadas, que haya terminado durante los dos años anteriores al nombramiento del servidor público, éste no podrá intervenir o participar en el perfeccionamiento

---

[19] *Íd.*, Anejo XVII, pág. 403.
[20] *Íd.*, pág. 402.
[21] *Íd.*

del contrato hasta pasados dos (2) años desde su nombramiento.

La prohibición permanece vigente mientras exista un vínculo de beneficio para el servidor público. Una vez haya terminado el vínculo de beneficio, el servidor público no puede intervenir o participar en el referido contrato hasta pasados dos (2) años.

En el transcurso del proceso ante la OEG, la entidad fiscalizadora presentó una serie de documentos financieros para demostrar la intervención de la Querellada en las contrataciones municipales. Los que la agencia estimó pertinentes y probados son:[22]

Con relación al Sr. Santos E. Meléndez Cordero

1. El 30 de junio de 2014, el señor Questell Alvarado, en representación del Municipio, otorgó el contrato número 2015-000033 con el ingeniero Meléndez Cordero, padre de la querellada, para la asesoría en los procesos de desarrollo y planificación de proyectos de construcción con vigencia del 1 de julio de 2014 al 30 de junio de 2015. El número de partida que consta en el contrato es el 01-04-04-94.31. La querellada aprobó y firmó el siguiente documento con relación a este contrato:
    a. *Hoja de control para la realizaci[ó]n de contratos* bajo la partida número 01-04-04-9431 por la cantidad de $2,000 mensuales para una cuantía total de $24,000.[23]
2. El 30 de junio de 2015, el alcalde, en representación del Municipio, otorgó el contrato número 2016-000105 con el ingeniero Meléndez Cordero, padre de la querellada, para la asesoría en los procesos de desarrollo y planificación de proyectos de construcción, con vigencia del 1 de julio de 2015 al 30 de junio de 2016. El número de partida que consta en el contrato es el 01-03-04-94.11.[24] En relación con dicho contrato, la querellada aprobó y firmó los siguientes documentos:
    a. *Hoja de control para la realizaci[ó]n de contratos* bajo la partida número 01-03-04-9411 por la cantidad de $2,000 mensuales para una cuantía total de $24,000.[25]
    b. Cheque número 17225 del 13 de julio de 2015, emitido a favor del ingeniero Meléndez Cordero por la cantidad de $3,997.20.[26]
    c. *Orden de compra o servicio,* número PO201600160, con fecha del 17 de julio de 2015, como jefa de la dependencia y directora de finanzas por el importe de $24,000.[27]

---

[22] *Íd.*, Anejo XXIV, págs. 542-558.
[23] *Íd.*, Anejo XVII, pág. 223.
[24] *Íd.*, págs. 224-225.
[25] *Íd.*, pág. 226.
[26] *Íd.*, págs. 229 y 231.
[27] *Íd.*, pág. 227.

3. El 30 de septiembre de 2015, el señor Questell Alvarado, en representación del Municipio, otorgó el contrato número 2016-000204 con el ingeniero Meléndez Cordero, padre de la querellada, para la supervisión de la construcción de la pista atlética. El número de partida que consta en el contrato es 02-03-04-94.32.[28] La querellada aprobó y firmó los siguientes documentos con relación a este contrato:

    a. *Hoja de control para la realización de contratos* con la partida número EMPR 1314 02-03-04-94.32 por la cantidad de $34,057.00.[29]

    b. *Orden de compra o servicio*, número PO201600965, del 16 de octubre de 2015, como jefa de la dependencia y directora de finanzas por la cantidad de $34,057.00.[30]

4. El 15 de abril de 2016, el alcalde, en representación del Municipio, otorgó el contrato número 2016-000654 con el ingeniero Meléndez Cordero, padre de la querellada, para la supervisión de la construcción de una cancha de baloncesto en el barrio Descalabrado, sector Ollas, en Santa Isabel. En el contrato consta el número de partida 02-03-04-94.32.[31] En relación con el contrato, la querellada aprobó y firmó los siguientes documentos:

    a. *Hoja de control para realización de contratos* con la partida número EMPR1314 02-03-04-9432 por la cantidad de $13,284.00.[32]

    b. *Orden de compra o servicio*, número PO201602925, del 26 de abril de 2016 por la cantidad de $13,284.00.[33]

    c. Cheque número 17222 del 13 de julio de 2016 expedido a favor del ingeniero Meléndez Cordero, padre de la querellada, por la cantidad de $2,059.02.[34]

5. El 1 de julio de 2016, el señor Questell Alvarado, en representación del Municipio, otorgó el contrato número 2017-000019 con el ingeniero Meléndez Cordero, padre de la querellada, para el asesoramiento en los procesos de desarrollo y planificación de proyectos de construcción, con vigencia del 1 de julio de 2016 al 31 de diciembre de 2016. El número de partida que consta en el contrato es 01-03-04-94.31.[35] La querellada aprobó y firmó el siguiente documento con relación a este contrato:

    a. *Orden de compra o servicio*, número PO201700303, del 27 de julio de 2016 por la cantidad de $12,000.00.[36]

6. En relación con el contrato número 2017-000019, el Municipio otorgó la enmienda a contrato número 2017-000019-A el 31 de diciembre de 2016, con vigencia hasta el 30 de junio de 2017, por una cuantía mensual de $2,000.00 para un total de $12,000.00. En la enmienda al contrato consta el

---

[28] *Íd.*, págs. 232-233.
[29] *Íd.*, pág. 234.
[30] *Íd.*, pág. 235.
[31] *Íd.*, págs. 236-237.
[32] *Íd.*, pág. 238.
[33] *Íd.*, págs. 239.
[34] *Íd.*, págs. 241 y 243.
[35] *Íd.*, págs. 244-245.
[36] *Íd.*, pág. 246.

número de partida 01-03-04-94.31.[37] La querellada aprobó y firmó los siguientes documentos relacionados con dicha enmienda:

    a. Documento titulado *Enmienda a contrato* bajo la partida 01-04-04-943 por la cantidad de $12,000.00.[38]

    b. *Orden de compra o servicio*, número PO201701569, del 19 de enero de 2017 con relación a la enmienda del contrato por la cantidad de $12,000.00.[39]

7. El 5 de octubre de 2016, el señor Questell Alvarado, en representación del Municipio, otorgó el contrato número 2017-000269 con el ingeniero Meléndez Cordero, padre de la querellada, para la supervisión de la construcción de la pista atlética. En el contrato consta el número de partida 02-03-04-94.32.[40] La querellada aprobó y firmó los siguientes documentos en relación con dicho contrato:

    a. *Hoja de control para formalizar contratos* por la cantidad de $22,500.00.[41]

    b. *Orden de compra o servicio*, número PO201701305, del 1 de diciembre de 2016 por la cantidad de $22,500.00.[42]

8. En relación con el contrato número 2017-000269, el 16 de junio de 2017, el Municipio otorgó la enmienda a contrato número 2017-000269-A, con vigencia hasta el 16 de septiembre de 2017, por un costo mensual de $2,500.00 para un total de $7,500.00.[43] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

    a. Documento titulado *Enmienda a contrato* por la cantidad de $7,500 bajo la partida número 01-04-04-9431.[44]

    b. *Orden de compra o servicio*, número PO20170266, del 30 de junio de 2017 por la cantidad de $7,500.00.[45]

    c. *Orden de compra o servicio*, número PO201800274, del 9 de agosto de 2017 por la cantidad de $7,500.00.[46]

9. El 3 de julio de 2017, la Sra. Lourdes S. Iglesias Rivera, secretaria municipal, en representación del Municipio, otorgó el contrato número 2018-000061 con el ingeniero Meléndez Cordero, padre de la querellada, para la asesoría en los procesos de desarrollo y planificación de proyectos de construcción, con vigencia del 3 de julio de 2017 al 30 de junio de 2018.[47] La querellada aprobó y firmó los siguientes documentos con relación a este contrato:

---

[37] *Íd.*, pág. 247.
[38] *Íd.*, pág. 248.
[39] *Íd.*, pág. 249.
[40] *Íd.*, págs. 250-251.
[41] *Íd.*, pág. 252.
[42] *Íd.*, pág. 253.
[43] *Íd.*, pág. 254.
[44] *Íd.*, pág. 255.
[45] *Íd.*, pág. 256.
[46] *Íd.*, pág. 257.
[47] *Íd.*, págs. 258-259.

    a. Hoja de control para formalizar contratos con la partida número 01-03-04-9411 por la cantidad de $24,000.00.[48]

    b. Orden de compra o servicio, número PO201800052, de julio de 2017 por la cantidad de $24,000.00 como jefa de la dependencia y directora de finanzas.[49]

    c. El 20 de febrero de 2018, la querellada firmó como "revisado" cinco (5) *comprobantes de desembolso* a favor de su padre:[50]

        i. Número de comprobante VR00038625 por la cantidad de $2,000.00, para el número de cheque 22262 asociado a la orden de compra número PO201800052.[51]

        ii. Número de comprobante VR00039370 por la cantidad de $5,200.00, para el número de cheque 22469 asociado a la orden de compra número PO201800052.[52]

        iii. Número de comprobante VR00040425 por la cantidad de $5,200.00, para el número de cheque 22882 asociado a la orden de compra número PO201800052.[53]

        iv. Número de comprobante VR00040974 por la cantidad de $5,200.00, para el número de cheque 23051 asociado a la orden de compra número PO201800052.[54]

        v. Número de comprobante VR00041372 por la cantidad de $5,200.00, para el número de cheque 23227 asociado a la orden de compra "*Multiple*".[55]

10. En relación con el contrato número 2018-000061, el 1 de septiembre de 2017, el Municipio otorgó la enmienda a contrato número 2018-000061-A, con vigencia de diez (10) meses a una cuantía mensual de $3,200.00 para un total de $32,000.00. En la enmienda a contrato consta el número de partida 01-03-04-94.11.[56] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

    a. Documento titulado *Enmienda a contrato* bajo la partida 01-03-04-9411 por la cantidad de $32,000.00.[57]

    b. *Orden de compra o servicio*, número PO201800885, del 15 de noviembre de 2017, como jefa de dependencia y directora de finanzas, por la cantidad de $32,000.00.[58]

    c. *Comprobante de desembolso*, número VR00042786, del 12 de febrero de 2018 por la cantidad de $5,200.00, para el número de cheque 23707, asociado a la orden de compra número PO201880085.[59]

---

[48] *Íd*., pág. 260.

[49] *Íd*., pág. 261.

[50] *Íd*., págs. 262-266.

[51] *Íd*., pág. 262; *Íd*., Anejo XX, págs. 469-473.

[52] *Íd*., Anejo XVII, pág. 263; *Íd*., Anejo XX, págs. 469-473.

[53] *Íd*., Anejo XVII, pág. 264; *Íd*., Anejo XX, págs. 469-473.

[54] *Íd*., Anejo XVII, pág. 265; *Íd*., Anejo XX, págs. 469-473.

[55] *Íd*., Anejo XVII, pág. 266; *Íd*., Anejo XX, págs. 469-473.

[56] *Íd*., Anejo XVII, pág. 267.

[57] *Íd*., pág. 268.

[58] *Íd*., pág. 269.

[59] *Íd*., pág. 270.

    d. Cheque número 23707 del 12 de febrero de 2018 a favor de Santos E. Meléndez Cordero por la cantidad de $4,941.00.[60]

    e. Cheque número 23995 del 28 de febrero de 2018 a favor de Santos E. Meléndez Cordero por la cantidad de $3,208.50.[61]

Con relación a SEM Design Group

11. El 25 de febrero de 2014, el señor Questell Alvarado, alcalde del Municipio, otorgó enmienda a contrato de servicios, contrato número 2013-000805-A con *SEM Design*, representada por su presidente, el ingeniero Meléndez Cordero, padre de la señora Meléndez Cruz, para la supervisión de las mejoras en el Mini Estadio Rubén Cruz Cedeño, por una cuantía máxima de $5,820.50. En la enmienda de contrato consta el número de partida 01-04-04-94.31.[62] En relación con dicho contrato la querellada aprobó y firmó el siguiente documento:

    a. *Orden de compra o servicio*, número PO20150122, del 14 de julio de 2014, como jefa de la dependencia y directora de finanzas, por la cantidad de $5,820.50.[63]

12. En relación con la enmienda de contrato número 2013-000805-A, el Municipio otorgó varias enmiendas adicionales:

    a. Enmienda a contrato de servicio, número 2013-000805-B, del 25 de abril de 2014 por una cuantía máxima de $8,730.75. En la enmienda del contrato consta el número de partida 01-04-04-94.31.[64] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

        i. Documento titulado *Enmienda a contrato* por la cantidad de $8,730.75 bajo el número de partida 01-04-04-94.31.[65]

        ii. *Orden de compra o servicio*, número 14-1419, del 22 de mayo de 2014 por la cantidad de $8,730.75.[66]

    b. Enmienda a contrato de servicio, número 2013-000805-C, del 31 de julio de 2014 por una cuantía máxima de $2,910.25. El número de partida que consta en la enmienda del contrato es 01-04-04-94.31.[67] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

        i. Documento titulado Enmienda a contrato por la cantidad de $2,910.25 bajo el número de partida 01-04-04-94.31.[68]

---

[60] *Íd*., págs. 271 y 273.
[61] *Íd*., pág. 275.
[62] *Íd*., pág. 165.
[63] *Íd*., pág. 166.
[64] *Íd*., pág. 167.
[65] *Íd*., pág. 168.
[66] *Íd*., pág. 169.
[67] *Íd*., pág. 170.
[68] *Íd*., pág. 171.

ii. Orden de compra o servicio, número PO20150276, del 13 de agosto de 2014 por la cantidad de $2,910.25.[69]

c. Enmienda a contrato de servicio, número 2013-000805-D, del 29 de agosto de 2014 por una cuantía máxima de $17,461.50 con vigencia hasta el 28 de febrero de 2015. En la enmienda de contrato consta el número de partida 02-03-04-94.32.[70] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

    i. Documento titulado *Enmienda a contrato* por la cantidad de $17,461.50 bajo el número de partida 02-03-04-94.32 del 29 de agosto de 2014.[71]

    ii. *Orden de compra o servicio*, número PO20150518, del 1 de octubre de 2014 por la cantidad de $17,461.50.[72]

d. Enmienda a contrato de servicio, número 2013-000805-E, del 27 de febrero de 2015 por una cuantía máxima de $2,910.25, con vigencia hasta el 31 de marzo de 2015. El número de partida que consta es el 01-04-04-94.31.[73] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

    i. Documento titulado Enmienda a contrato del 27 de febrero de 2015 por la cantidad de $2,910.25 bajo el número de partida 01-04-04-94.31.[74]

    ii. Orden de compra o servicio, número PO20151602, de16 de marzo de 2015 por la cantidad de $2,910.25.[75]

e. Enmienda a contrato de servicio, número 2013-000805-F, del 31 de marzo de 2015 por una cuantía máxima de $2,910.25 con fondos de la partida número 01-04-04-94.31, con vigencia hasta el 30 de abril de 2015.[76] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

    i. Documento titulado *Enmienda a contrato* por la cantidad de $2,910.25 bajo el número de partida 01-04-04-94.31.[77]

    ii. *Orden de compra o servicio*, número PO20151842, del 21 de abril de 2015 por la cantidad de $2,910.25, como jefa de la dependencia de obras públicas y directora de finanzas.[78]

f. Enmienda a contrato de servicio, número 2013-000805-G, del 30 de abril de 2015 por una cuantía máxima de $5,820.50 con fondos de la partida número 02-03-04-94.32.[79] La querellada

---

[69] *Íd.*, pág. 172.
[70] *Íd.*, pág. 173.
[71] *Íd.*, pág. 174.
[72] *Íd.*, pág. 175.
[73] *Íd.*, pág. 176.
[74] *Íd.*, pág. 177.
[75] *Íd.*, pág. 178.
[76] *Íd.*, pág. 179.
[77] *Íd.*, pág. 180.
[78] *Íd.*, pág. 181.
[79] *Íd.*, pág. 182.

aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

    i. Documento titulado *Enmienda a contrato* por la cantidad de $5,820.50 bajo el número de partida 02-03-04-9432.[80]

    ii. *Orden de compra o servicio*, número PO20152279, del 18 de junio de 2015 por la cantidad de $5,820.50, como jefa de la dependencia y directora de finanzas.[81]

g. Enmienda a contrato de servicio, número 2013-000805-H, del 30 de junio de 2015 por una cuantía máxima de $2,910.25 con fondos de la partida número 01-03-04-94.31.[82] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

    i. Documento titulado *Enmienda a contrato* por la cantidad de $2,910.25 bajo el número de partida 01-04-04-94.31.[83]

    ii. *Orden de compra o servicio*, número PO201600228, del 24 de julio de 2015 por la cantidad de $2,910.25.[84]

13. El 25 de febrero de 2014, el señor Questell Alvarado, en representación del Municipio, otorgó enmienda a contrato de servicio, número 2013-000806-A, con *SEM Design,* representada por su presidente, el ingeniero Meléndez Cordero, padre de la señora Meléndez Cruz, para la supervisión de la rehabilitación del parque de pelota y cierre de parque en barrio Playa Cortada, con vigencia hasta el 31 de julio de 2014, por una cuantía máxima de $12,512.50 con fondos de la partida número 01-04-04-94.31.[85] La querellada aprobó y firmó los siguientes documentos con relación a este contrato:

a. *Orden de compra o servicio*, número 14-1137-B, del 24 de febrero de 2014 por la cantidad de $12,512.50.[86]

b. Orden de compra o servicio, número PO20150123, del 14 de julio de 2014 por la cantidad de $5,005.00.[87]

14. En relación con la enmienda de contrato número 2013-000806-A, el Municipio de Santa Isabel otorgó las siguientes enmiendas adicionales:

a. *Enmienda a contrato de servicio*, número 2013-000806-B, del 31 de julio de 2014 por una cuantía máxima de $2,502.50 con fondos de la partida número 01-04-04-94.31.[88] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

    i. Documento titulado *Enmienda a contrato* por la cantidad de $2,502.50 bajo el número de partida 01-04-04-94.31.[89]

---

[80] *Íd.*, pág. 183.
[81] *Íd.*, pág. 184.
[82] *Íd.*, pág. 185.
[83] *Íd.*, pág. 186.
[84] *Íd.*, pág. 187.
[85] *Íd.*, pág. 188.
[86] *Íd.*, pág. 189.
[87] *Íd.*, pág. 190.
[88] *Íd.*, pág. 191.
[89] *Íd.*, pág. 192.

        ii. *Orden de compra o servicio,* número PO20150277, del 13 de agosto de 2014 por la cantidad de $2,502.50.[90]

    b. Enmienda a contrato de servicio, número 2013-000806-C, del 29 de agosto de 2014 por una cuantía máxima de $15,015.00 con fondos de la partida número 02-03-04-94.32.[91] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

        i. Documento titulado *Enmienda a contrato* por la cantidad de $15,015.00 bajo el número de partida 02-03-04-94.32 del 29 de agosto de 2014.[92]

        ii. *Orden de compra o servicio,* número PO20150517, del 1 de octubre de 2014 por la cantidad de $15,015.00.[93]

    c. Enmienda a contrato de servicio, número 2013-000806-D, del 27 de febrero de 2015 por una cuantía máxima de $2,502.50 con fondos de la partida número 01-04-04-94.31.[94] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

        i. Documento titulado *Enmienda a contrato* por la cantidad de $2,502.50 bajo el número de partida 01-04-04-94.31 del 27 de febrero de 2015.[95]

        ii. *Orden de compra o servicio,* número PO20151601, del 16 de marzo de 2015 por la cantidad de $2,502.50.[96]

    d. Enmienda a contrato de servicio, número 2013-000806-E, del 31 de marzo de 2015 por una cuantía máxima de $2,502.50 con fondos de la partida número 01-04-04-94.31.[97] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

        i. Documento titulado *Enmienda a contrato* por la cantidad de $2,502.50 bajo el número de partida 01-04-04-94.31.[98]

        ii. *Orden de compra o servicio,* número PO20151843, del 21 de abril de 2015 por la cantidad de $2,502.50, como jefa de la dependencia de obras públicas y directora de finanzas.[99]

    e. Enmienda a contrato de servicio, número 2013-000806-F, del 30 de abril de 2015 por una cuantía máxima de $2,502.50 con fondos de la partida número 01-03-04-94.11.[100] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

---

[90] *Íd.*, pág. 193.
[91] *Íd.*, pág. 194.
[92] *Íd.*, pág. 195.
[93] *Íd.*, pág. 196.
[94] *Íd.*, pág. 197.
[95] *Íd.*, pág. 198.
[96] *Íd.*, pág. 199.
[97] *Íd.*, pág. 200.
[98] *Íd.*, pág. 201.
[99] *Íd.*, pág. 202.
[100] *Íd.*, pág. 203.

i. Documento titulado *Enmienda a contrato* por la cantidad de $7,507.50 bajo el número de partida 01-03-04-94.11.[101]

ii. *Orden de compra o servicio*, número PO20152277, del 18 de junio de 2015 por la cantidad de $7,507.50, como jefa de la dependencia de obras públicas y directora de finanzas.[102]

f. Enmienda a contrato de servicio, número 2013-000806-G, del 31 de julio de 2015, por una cuantía máxima de $2,502.50 con fondos de la partida número 01-03-04-94.11.[103] La querellada aprobó y firmó el siguiente documento relacionado a dicha enmienda:

i. *Orden de compra o servicio*, número PO201600434, del 21 de agosto de 2015 por la cantidad de $2,502.50, como jefa de la dependencia y directora de finanzas.[104]

g. Enmienda a contrato de servicio, número 2013-000806-H, del 31 de agosto de 2015, por una cuantía máxima de $5,005.00 con fondos de la partida número 01-03-04-94.11.[105] La querellada aprobó y firmó el siguiente documento relacionado a dicha enmienda:

i. Documento titulado *Enmienda a contrato* por la cantidad de $5,005.00 bajo el número de partida 01-03-04-94.11.[106]

ii. *Orden de compra o servicio*, número PO201600704, del 16 de septiembre de 2015 por la cantidad de $5,005.00 como jefa de la dependencia y directora de finanzas.[107]

15. El 25 de marzo de 2014, el señor Questell Alvarado, el entonces alcalde del Municipio, otorgó un contrato de servicios profesionales, contrato número 2014-000162, con *SEM Design*, representada por su presidente, el ingeniero Meléndez Cordero, padre de la señora Meléndez Cruz, para la supervisión de la construcción de la cancha de baloncesto en el barrio Descalabrado, sector Ollas, en Santa Isabel. En el contrato consta el número de partida 02-03-04-94.32.[108] En relación con dicho contrato la querellada aprobó y firmó el siguiente documento:

a. *Hoja de control para realización de contratos* por la cantidad de $22,140.00 bajo el número de partida 02-03-04-94.32.[109]

16. En relación con el contrato número 2014-000162, el Municipio otorgó la enmienda a contrato de servicio, número 2014-000162-B, del 30 de abril de 2015, por una cuantía máxima de $13,284.00 con fondos de la partida número 01-04-04-94.31.[110] La querellada

---

[101] *Íd.*, pág. 204.
[102] *Íd.*, pág. 205.
[103] *Íd.*, pág. 206.
[104] *Íd.*, pág. 207.
[105] *Íd.*, pág. 208.
[106] *Íd.*, pág. 209.
[107] *Íd.*, pág. 210.
[108] *Íd.*, págs. 211-212.
[109] *Íd.*, pág. 213.
[110] *Íd.*, pág. 214.

aprobó y firmó los siguientes documentos relacionados a dicha enmienda:
   a. Documento titulado *Enmienda a contrato* por la cantidad de $13,284.00 bajo el número de partida 01-04-04-94.31.[111]
   b. *Orden de compra o servicio,* número PO20152270, del 17 de junio de 2015 por la cantidad de $13,284.00.[112]

17. El 24 de noviembre de 2015, el señor Questell Alvarado, entonces alcalde, en representación del Municipio, otorgó un contrato de servicios profesionales, número 2016-000327, con *SEM Design,* representada por su presidente, el ingeniero Meléndez Cordero, padre de la señora Meléndez Cruz, para la supervisión de la construcción de cancha de baloncesto en el barrio Descalabrado. En el contrato consta el número de partida 01-04-04-94.31.[113] La querellada aprobó y firmó los siguientes documentos con relación a este contrato:
   a. *Hoja de control para la realización de contratos* por la cantidad de $4,428.00 bajo el número de partida 01-04-04-94.31.[114]
   b. *Orden de compra o servicio,* número PO201601366, del 1 de diciembre de 2015 por la cantidad de $4,428.00.[115]

   Con relación a SEM A/E Design & Management, P.S.C.

18. El 12 de febrero de 2018, el alcalde, en representación del Municipio, otorgó el contrato número 2018-000260 con *SEM A/E Design,* representada por su presidente, el ingeniero Meléndez Cordero, padre de la querellada, para asesorar y representar sobre el diseño general, permisos y supervisión para las mejoras a la plaza de recreo del Municipio.[116] En relación con dicho contrato, la querellada aprobó y firmó el siguiente documento:
   a. Hoja de control para formalizar contratos para SEM A/E Design por la cuantía $35,328.00 bajo la partida número 02-03-04-9411.[117]

19. El 12 de febrero de 2018, el señor Questell Alvarado, en representación del Municipio, otorgó el contrato número 2018-000261 con *SEM A/E Design,* representada por su presidente, el ingeniero Meléndez Cordero, padre de la querellada, para asesorar y representar sobre planos, diseño y supervisión para la ampliación del cementerio municipal.[118] La querellada aprobó y firmó el siguiente documento con relación a este contrato:
   a. *Hoja de control para formalizar contratos* para *SEM A/E Design* por la cuantía $43,383.00 bajo la partida número 02-03-04-9411.[119]

---

[111] *Íd.,* pág. 215
[112] *Íd.,* pág. 216.
[113] *Íd.,* págs. 217-218.
[114] *Íd.,* pág. 219.
[115] *Íd.,* pág. 220.
[116] *Íd.,* págs. 277-278.
[117] *Íd.,* pág. 279.
[118] *Íd.,* págs. 280-281.
[119] *Íd.,* pág. 282.

Con relación a EMC Design Management, P.S.C.

20. El 25 de marzo de 2013, el alcalde, en representación del Municipio, otorgó el contrato de servicios profesionales, número 2014-000163, con *EMC Design*, representada por su presidente, el ingeniero Meléndez Cruz, hermano de la querellada, para la inspección de la construcción de cancha de baloncesto en el barrio Descalabrado. En el contrato consta el número de partida 02-03-04-94.32.[120] En relación con dicho contrato, la querellada aprobó y firmó el siguiente documento:
   a. *Hoja de control para la realización de contratos* por la cantidad de $30,000.00 bajo la partida 02-03-04-94.32.[121]
21. En relación con el contrato número 2014-000163, el Municipio otorgó las siguientes enmiendas:
   a. Enmienda a contrato de servicio, número 2014-000163-A, del 6 de febrero de 2015 por una cuantía total de $9,000.00 con fondos de la partida número 01-04-04-94.31.[122] La querellada aprobó y firmó los siguientes documentos:
      i. Documento titulado *Enmienda a contrato* por la cantidad de $9,000.00 bajo la partida 01-04-04-94.31.[123]
      ii. *Orden de compra o servicio*, número PO20151508, del 12 de marzo de 2015 por la cantidad de $9,000.00.[124]
   b. Enmienda a contrato de servicio, número 2014-000163-B, del 30 de abril de 2015 por una cuantía total de $18,000.00 con fondos de la partida número 01-04-04-94.31.[125] La querellada aprobó y firmó los siguientes documentos:
      i. Documento titulado *Enmienda a contrato* por la cantidad de $18,000.00 bajo la partida 01-04-04-94.31.[126]
      ii. *Orden de compra o servicio*, número PO20152273, del 17 de junio de 2015 por la cantidad de $18,000.00.[127]
22. El 25 de febrero de 2014, el señor Questell Alvarado, en representación del Municipio, otorgó la enmienda a contrato de servicio, número 2013-000804-B, con *EMC Design*, representada por su presidente, el ingeniero Meléndez Cruz, hermano de la querellada, para la inspección de la rehabilitación del parque de pelota y cierre de parque en el barrio Playa Cortada, por una cuantía total de $10,500.00 con fondos de la partida número 01-04-04-94.31.[128] La querellada aprobó y firmó el siguiente documento con relación a este contrato:

---

[120] *Íd.*, págs. 328-329.
[121] *Íd.*, pág. 330.
[122] *Íd.*, pág. 331.
[123] *Íd.*, pág. 332.
[124] *Íd.*, pág. 333.
[125] *Íd.*, pág. 334.
[126] *Íd.*, pág. 335.
[127] *Íd.*, pág. 336.
[128] *Íd.*, pág. 305.

    a. *Orden de compra o servicio*, número 14-1151-A, del 24 de febrero de 2014 por la cantidad de $10,500.00.[129]

23. En relación con la enmienda de contrato número 2013-000804-B, el Municipio de Santa Isabel otorgó las siguientes enmiendas adicionales:

    a. Enmienda a contrato de servicio, número 2013-000804-C, del 31 de julio de 2014 por la cuantía total de $2,100.00 con fondos de la partida número 01-04-04-94.31.[130] La querellada aprobó y firmó los siguientes documentos:

        i. Documento titulado *Enmienda a contrato* del 6 de agosto de 2014 por la cantidad de $2,100.00 bajo la partida número 01-04-04-94.31.[131]

        ii. *Orden de compra o servicio*, número PO20150279, del 13 de agosto de 2014 por la cantidad de $2,100.00.[132]

    b. Enmienda a contrato de servicio, número 2013-000804-D, del 29 de agosto 2014 por una cuantía total de $12,600.00 con fondos de la partida número 02-03-04-94.32.[133] La querellada aprobó y firmó los siguientes documentos:

        i. Documento titulado *Enmienda a contrato* del 29 de agosto de 2014 por la cantidad de $12,600.00 bajo la partida número 02-03-04-94.32.[134]

        ii. *Orden de compra o servicio*, número PO20150515, del 1 de octubre de 2014 por la cantidad de $12,600.00.[135]

    c. Enmienda a contrato de servicio, número 2013-000804-E, del 27 de febrero de 2015 por una cuantía total de $2,100.00 con fondos de la partida número 01-04-04-94.31.[136] La querellada aprobó y firmó los siguientes documentos:

        i. Documento titulado *Enmienda a contrato* del 27 de febrero de 2015 por la cantidad de $2,100.00 bajo el número de partida 01-04-04-94.31.[137]

        ii. *Orden de compra o servicio*, número PO20151806, del 14 de abril de 2015 por la cantidad de $2,100.00.[138]

    d. Enmienda a contrato de servicio, número 2013-000804-F, del 31 de marzo de 2015 por una cuantía total de $2,100.00 con fondos de la partida número 01-04-04-94.31.[139] La querellada aprobó y firmó los siguientes documentos:

        i. Documento titulado *Enmienda a contrato* por la cantidad de 52,100.00 bajo el número de partida 01-04-04-94.31.[140]

---

[129] *Íd.*, págs. 306-307.
[130] *Íd.*, pág. 308.
[131] *Íd.*, pág. 309.
[132] *Íd.*, pág. 310.
[133] *Íd.*, pág. 311.
[134] *Íd.*, pág. 312.
[135] *Íd.*, pág. 313.
[136] *Íd.*, pág. 314.
[137] *Íd.*, pág. 315.
[138] *Íd.*, pág. 316.
[139] *Íd.*, pág. 317.
[140] *Íd.*, pág. 318.

   ii. *Orden de compra o servicio,* número PO20151844, del 21 de abril de 2015 por la cantidad de $2,100.00.[141]

e. Enmienda a contrato de servicio, número 2013-000804-G, del 30 de abril de 2015 por una cuantía total de $6,300.00 con fondos de la partida número 01-03-04-94.11.[142] La querellada aprobó y firmó los siguientes documentos:

   i. Documento titulado *Enmienda a contrato* por la cantidad de $6,300.00 bajo el número de partida 01-03-04-94.11.[143]

   ii. *Orden de compra o servicio,* número PO20152278, del 18 de junio de 2015 por la cantidad de $6,300.00 como jefa de la dependencia y directora de finanzas.[144]

f. Enmienda a contrato de servicio, número 2013-000804-H, del 31 de julio de 2015 por una cuantía total de $2,100.00 con fondos de la partida número 01-03-04-94.11.[145] La querellada aprobó y firmó el siguiente documento:

   i. *Orden de compra o servicio,* número PO201600433, del 21 de agosto de 2015 por la cantidad de $2,100.00 como jefa de la dependencia y directora de finanzas.[146]

g. Enmienda a contrato de servicio, número 2013-000804-I, del 31 de agosto de 2015 por una cuantía total de $4,200.00 con fondos de la partida número 01-03-04-94.11.[147] La querellada aprobó y firmó los siguientes documentos:

   i. Documento titulado *Enmienda a contrato* por la cantidad de $4,200 bajo la partida 01-03-04-9411.[148]

   ii. *Orden de compra o servicio,* número PO201600705, del 16 de septiembre de 2015 por la cantidad de $4,200.00 como jefa de la dependencia y directora de finanzas.[149]

24. El 25 de abril de 2014, el señor Questell Alvarado, en representación del Municipio, otorgó la enmienda a contrato de servicio, número 2013-000803-B, con *EMC Design,* representada por su presidente, el ingeniero Meléndez Cruz, hermano de la querellada, para la inspección de mejoras al Mini Estadio Rubén Cruz Cedeño, por una cuantía total de $10,500.00 con fondos de la partida número 01-04-04-94.31.[150] En relación con la enmienda a dicho contrato, la querellada aprobó y firmó los siguientes documentos:

a. Documento titulado *Enmienda a contrato* por la cantidad de $3,500.00 mensuales por un periodo de 3 meses para un total de $10,500.00.[151]

---

[141] *Íd.,* pág. 319.
[142] *Íd.,* pág. 320.
[143] *Íd.,* pág. 321.
[144] *Íd.,* pág. 322.
[145] *Íd.,* pág. 323.
[146] *Íd.,* pág. 324.
[147] *Íd.,* pág. 325.
[148] *Íd.,* pág. 326.
[149] *Íd.,* pág. 327.
[150] *Íd.,* pág. 283.
[151] *Íd.,* pág. 284.

b. *Orden de compra o servicio*, número 14-1385, del 15 de mayo de 2014 por la cantidad de $10,500.00.[152]

25. En relación con la enmienda de contrato número 2013-000803-B, el Municipio otorgó las siguientes enmiendas adicionales:

    a. Enmienda a contrato de servicio, número 2013-000803-C, del 31 de julio de 2014 por una cuantía total de $3,500.00 con fondos de la partida número 01-04-04-94.31.[153] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

        i. Documento titulado Enmienda a contrato del 6 de agosto de 2014 por la cantidad de $3,500.00 bajo la partida número 01-04-04-94.31.[154]

        ii. Orden de compra o servicio, número PO20150178, del 13 de agosto de 2014 por la cantidad de $3,500.00.[155]

    b. Enmienda a contrato de servicio, número 2013-000803-D, del 29 de agosto de 2014 por una cuantía total de $21,000.00 con fondos de la partida número 02-03-04-94.32.[156] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

        i. Documento titulado *Enmienda a contrato* del 29 de agosto de 2014 por la cuantía de $21,000.00 bajo el número de partida 02-03-04-94.32 del Fondo Especial.[157]

        ii. *Orden de compra o servicio*, número PO20150516, del 1 de octubre de 2014 por la cantidad de $21,000.00.[158]

    c. Enmienda a contrato de servicio, número 2013-000803-E, del 27 de febrero de 2015 por una cuantía total de $3,500.00 con fondos de la partida número 01-04-04-94.31.[159] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

        i. Documento titulado *Enmienda a contrato* por la cuantía de $3,500.00 bajo la partida 01-04-04-94.31.[160]

        ii. Orden de compra o servicio, número PO20151805, del 14 de abril de 2015 por la cantidad de $3,500.00.[161]

    d. Enmienda a contrato de servicio, número 2013-000803-F, del 31 de marzo de 2015 por una cuantía total de $3,500.00 con fondos de la partida número 01-04-04-94.31.[162] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

---

[152] *Íd.*, pág. 285.
[153] *Íd.*, pág. 286.
[154] *Íd.*, pág. 287.
[155] *Íd.*, pág. 288.
[156] *Íd.*, pág. 289.
[157] *Íd.*, pág. 290.
[158] *Íd.*, pág. 291.
[159] *Íd.*, pág. 292.
[160] *Íd.*, pág. 293.
[161] *Íd.*, pág. 294.
[162] *Íd.*, pág. 295.

        i. Documento titulado *Enmienda a contrato* por la cuantía de $3,500.00 bajo la partida 01-04-04-94.31.[163]

        ii. *Orden de compra o servicio,* número PO20151845, del 21 de abril de 2015 por la cantidad de $3,500.00.[164]

e. Enmienda a contrato de servicio, número 2013-000803-G, del 30 de abril de 2015 por una cuantía total de $7,000.00 con fondos de la partida número 02-03-04-94.32.[165] La querellada aprobó y firmó los siguientes documentos relacionados a dicha enmienda:

        i. Documento titulado *Enmienda a contrato* por la cantidad de $7,000.00 bajo la partida 02-03-04-9432.[166]

        ii. *Orden de compra o servicio,* número PO20152280, del 18 de junio de 2015 por la cantidad de $3,500.00 como jefa de la dependencia y directora de finanzas.[167]

f. Enmienda a contrato de servicio, número 2013-000803-H, del 30 de junio de 2015 por una cuantía total de $3,500.00 con fondos de la partida número 01-03-04-94.31.[168] La querellada aprobó y firmó el siguiente documento:

        i. Documento titulado *Enmienda a contrato* por la cantidad de $3,500.00 bajo la partida 01-01-04-94.31.[169]

g. Enmienda a contrato de servicio, número 2013-000803-I, del 20 de julio de 2015, en el cual consta el número de partida 01-04-04-94.31.[170] La querellada aprobó y firmó el siguiente documento:

        i. *Orden de compra o servicio,* número PO201600229, del 24 de julio de 2015 por la cantidad de $3,500.00.[171]

26. El 24 de noviembre de 2015, el señor Questell Alvarado, en representación del Municipio, otorgó el contrato de servicios profesionales, número 2016-000328, con *EMC Design,* representada por su presidente, el ingeniero Meléndez Cruz, hermano de la querellada, para la inspección de la construcción de cancha de baloncesto en el barrio Descalabrado. En el contrato consta el número de partida 01-04-04-94.31.[172] En relación con dicho contrato, la querellada aprobó y firmó los siguientes documentos:

a. *Hoja de control para realización de contratos* por la cantidad de $6,000.00 bajo la partida 01-04-04-94.31.[173]

---

[163] *Íd.*, pág. 296.
[164] *Íd.*, pág. 297.
[165] *Íd.*, pág. 298.
[166] *Íd.*, pág. 299.
[167] *Íd.*, pág. 300.
[168] *Íd.*, pág. 301.
[169] *Íd.*, pág. 302.
[170] *Íd.*, pág. 303.
[171] *Íd.*, pág. 304.
[172] *Íd.*, págs. 337-338.
[173] *Íd.*, pág. 339.

b. *Orden de compra o servicio*, número PO201601367, del 1 de diciembre de 2015 por la cantidad de $6,000.00.[174]

27. El 15 de abril de 2016, el alcalde, en representación del Municipio, otorgó el contrato de servicios profesionales, número 2016-000655, con *EMC Design*, representada por su presidente, el ingeniero Meléndez Cruz, hermano de la querellada, para la inspección de la construcción de cancha de baloncesto en el barrio Descalabrado. En el contrato consta la partida número 02-03-04-94.32.[175] La querellada aprobó y firmó los siguientes documentos con relación a este contrato:

a. *Hoja de control para la realización de contratos* por la cantidad de $18,000.00 bajo la partida número 02-03-04-94.32.[176]

b. *Orden de compra o servicio*, número PO201602926, del 27 de abril de 2016 por la cantidad de $18,000.00.[177]

c. Cheque número 17221 del 13 de julio de 2016 a favor de *EMC Design* por la cantidad de $3,000.00.[178]

Con relación a A/E Design Group, P.S.C.

28. El 13 de abril de 2016, el señor Questell Alvarado, en representación del Municipio, otorgó el contrato de servicios profesionales, número 2016-000653, con *A/E Design*, cuyo incorporador y presidente es el hermano de la querellada, representada por el padre de la querellada, el ingeniero Meléndez Cordero, como director de operaciones, para completar la revisión integral de los planos de ordenamiento territorial de Santa Isabel. En el contrato consta el número de partida 02-03-04-94.11.[179] En relación con dicho contrato, la querellada aprobó y firmó el siguiente documento:

a. *Hoja de control para realización de contratos* bajo la partida número 02-03-04-94.11 por la cantidad de $107,500.00.

29. El 6 de febrero de 2017, el alcalde, en representación del Municipio, otorgó el contrato de servicios profesionales número 2017-000309 con *A/E Design*,[180] representada por el padre de la querellada, el ingeniero Meléndez Cordero, como director de operaciones, para la supervisión para la construcción de cancha de baloncesto en el barrio Descalabrado, por la cantidad de $20,200.00 con fondos de la partida número 01-04-04-94.31.[181] En relación con dicho contrato la querellada aprobó y firmó el siguiente documento:

a. *Hoja de control para realización de contratos* bajo la partida número 01-04-04-94.31 por la cantidad de $20,200.00.[182]

---

[174] *Íd.*, pág. 340.
[175] *Íd.*, págs. 341-342.
[176] *Íd.*, pág. 343.
[177] *Íd.*, pág. 344.
[178] *Íd.*, págs. 346-348.
[179] *Íd.*, págs. 350-351.
[180] *Íd.*, pág. 353.
[181] *Íd.*, págs. 355-356 y 361-367.
[182] *Íd.*, pág. 357.

30. La transacción del 14 de julio de 2017 por la cantidad de $5,050.00 a favor de *A/E Design*, relacionada con la enmienda 2017-000309-A, enmienda a contrato que nunca se efectuó, fue realizada por el "*user to enter*" de "*nmelendez*".[183] Dicha transacción fue pagada con el cheque número 21712 por la cantidad de $4,696.50 a favor de *A/E Design*, el cual fue cobrado por la corporación.[184]

31. El 22 de octubre de 2018, la señora Iglesias Rivera, secretaria municipal, certificó que no se efectuó ninguna enmienda para el contrato 2017-000309. Así también, certificó que, al no efectuarse enmienda a dicho contrato, no se registró la misma en la Oficina del Contralor de Puerto Rico.[185]

32. El 2 de noviembre de 2018, la Sra. Carmen Rivera Torres, directora interina de Finanzas del Municipio en ese momento, certificó que la orden de compra o servicio número PO201800123 del 14 de julio de 2017, en relación con la enmienda 2017-000309-A, por la cantidad de $5,050.00 a favor de *A/E Design*, es copia fiel y exacta extraída del sistema *SIMA - Rock Solid*.[186]

## Con relación a CPA Advisors Group, P.S.C.

33. El 30 de junio de 2014, el señor Questell Alvarado, en representación del Municipio, otorgó el contrato por servicios profesionales y consultivos número 2015-000008 con *CPA Advisors*, representada por su presidente, el señor Meléndez Cordero, CPA, tío de la querellada, para servicios financieros y de contabilidad. En el contrato consta el número de partida 01-03-04-94.11.[187] En relación con dicho contrato, la querellada aprobó y firmó los siguientes documentos:
    a. *Hoja de control para la realización de contratos* por la cantidad de $93,940.00.[188]
    b. Orden de compra o servicio, número PO20150203, del 23 de julio de 2014 por la cantidad de $93,940.00 como jefa de la dependencia y directora de finanzas.[189]

## Con relación a Financial Advisors, LLC

34. El 30 de junio de 2015, el alcalde, en representación del Municipio, otorgó el contrato por servicios profesionales y consultivos, número 2016-000001, con *Financial Advisors*, representada por su presidente, el señor Meléndez Cordero, CPA, tío de la querellada, para servicios financieros y de contabilidad. En el contrato consta el número de partida 01-03-04-94.11.[190] La querellada aprobó y firmó los siguientes documentos con relación a este contrato:

---

[183] *Íd.*, págs. 359-360.
[184] *Íd.*, págs. 369-372.
[185] *Íd.*, pág. 368; *Íd.*, Anejo XX, págs. 475-476.
[186] *Íd.*, Anejo XVII, pág. 358.
[187] *Íd.*, págs. 373-374.
[188] *Íd.*, pág. 375.
[189] *Íd.*, pág. 376.
[190] *Íd.*, págs. 377-378.

a. *Hoja de control para la realización* de contratos por la cantidad de $93,940.00 en la partida número 01-03-04-94.11.[191]

b. Cheque número 17227 del 13 de julio de 2015 por la cantidad de $4,756.95 a favor de *Financial Advisors*.[192]

c. *Orden de compra o servicio*, número PO201600139, del 14 de julio de 2015 por la cantidad de $93,940.00, como jefa de la dependencia y directora de recursos humanos.[193]

35. El 1 de julio de 2016, el señor Questell Alvarado, en representación del Municipio, otorgó el contrato de servicio número 2017-000001 con *Financial Advisors*, representada por su presidente, el señor Meléndez Cordero, CPA, tío de la querellada, para servicios financieros y de contabilidad. En el contrato consta el número de partida 01-03-04-94.11.[194] En relación con dicho contrato, la querellada aprobó y firmó el siguiente documento:

a. *Orden de compra o servicio*, número PO201700568, del 12 de agosto de 2016 por la cantidad de $66,000.00.[195]

36. En relación con el contrato número 2017-000001, el 31 de diciembre de 2016, el Municipio otorgó la enmienda contrato de servicio, número 2017-000001-A, por la cantidad de $39,600.00 con fondos de la partida número 01-03-04-94.11.[196] La querellada aprobó y firmó los siguientes documentos:

a. Documento titulado *Enmienda a contrato* por la cantidad de $39,600.00 con la partida número 01-03-04-9411.[197]

b. *Orden de compra o servicio*, número PO201701615, del 30 de enero de 2017 por la cantidad de $39,600.00, como jefa de la dependencia y directora de finanzas.[198]

37. El 3 de julio de 2017, la señora Iglesias Rivera, secretaria municipal, en representación del Municipio, otorgó el contrato por servicios profesionales y consultivos número 2018-000032 con *Financial Advisors*, representada por su presidente, el señor Meléndez Cordero, CPA, tío de la querellada, para servicios financieros y de contabilidad. En el contrato consta el número de partida 01-03-04-94.11.[199] La querellada aprobó y firmó los siguientes documentos con relación a este contrato:

a. *Orden de compra o servicio*, número PO201800136, del 18 de julio de 2017 por la cantidad de $93,940.00, como jefa de la dependencia y directora de finanzas.[200]

b. *Comprobante de desembolso*, número VR00042299, del 17 de enero de 2018 por la cantidad de $9,350.00 a favor de *Financial*

---

[191] *Íd.*, pág. 379.
[192] *Íd.*, págs. 382-384.
[193] *Íd.*, pág. 380.
[194] *Íd.*, págs. 385-386.
[195] *Íd.*, pág. 387.
[196] *Íd.*, págs. 388-389.
[197] *Íd.*, pág. 390.
[198] *Íd.*, pág. 391.
[199] *Íd.*, págs. 392-393.
[200] *Íd.*, pág. 394.

> *Advisors*, con el número de cheque 23509 asociado a la orden de compra PO201800136.[201]
>
> c. Cheque número 23509 del 17 de enero de 2018 por la cantidad de $8,800.50, a favor de *Financial Advisors*.[202]
>
> d. *Comprobante de desembolso*, número VR00042973, del 14 de febrero de 2018 por la cantidad de $5,500.00 para *Financial Advisors*, con el número de cheque 23757 asociado a la orden de compra PO201800136.[203]
>
> e. Cheque número 23757 del 14 de febrero de 2018 por la cantidad de $5,115.00 a favor de Financial Advisors.[204]

38. La querellada renunció a su puesto como directora de Finanzas a finales de febrero de 2018.[205]

39. No existe autorización, dispensa, opinión o consulta emitida por la OEG sobre la señora Meléndez Cruz.[206]

Ante la documentación de la conducta de la Sra. Meléndez Cruz, el 6 de octubre de 2022, la OEG presentó una *Moción Solicitando Adjudicación Sumaria,* en la que anejó los documentos, contratos, cheques y comprobantes en los que intervino la Querellada con relación a los negocios entre el Municipio y sus parientes.[207] El 9 de enero de 2023, la Querellada presentó su *Réplica a Solicitud de Adjudicación Sumaria* en la que presentó varias defensas y solicitó que se adjudicara a favor de la Querellada en el proceso sumario.[208] Entre las defensas levantadas, la Querellada señaló: (1) que el Municipio contrató al licenciado Pedro Ortiz Álvarez que presentó una opinión legal indicando que no existía ilegalidad en los trabajos de la Querellada; (2) que el 5 de abril de 2017, le remitió a la OEG una carta en la que informó a la entidad de sus relaciones familiares con contratistas del Municipio; (3) alegó no tener relación profesional ni económica con sus parientes o las compañías indicadas; (4) que las entidades de sus parientes tenían contratos desde antes de que ella ocupara el puesto de directora de

---

[201] *Íd.*, pág. 395.
[202] *Íd.*, págs. 396-398.
[203] *Íd.*, pág. 399.
[204] *Íd.*, págs. 400-401.
[205] *Íd.*, págs. 92 y 94; *Íd.*, Anejo XX, págs. 415, 417-428 y 430-435.
[206] *Íd.*, Anejo XVII, pág. 402.
[207] *Íd.*, págs. 92-404.
[208] *Íd.*, Anejo XX, págs. 407-476.

Finanzas del Municipio; (5) que sus actos como directora de Finanzas fueron para cumplir con las directrices del Alcalde, sobre las cuales ella no tenía injerencia alguna; y, (6) que la firma de cheques se debió a un error involuntario.

Luego de varios trámites procesales, la Oficial Examinadora, la licenciada Almodóvar Pérez, presentó un *Informe* que fue acogido en su totalidad por el Director Ejecutivo de la OEG.[209] En primer lugar, la OEG descartó que la Querellada haya incurrido en violaciones al Artículo 4.3 (c) de la LOOEG, *supra*. No obstante, sí concluyó que cometió tres (3) infracciones al Artículo 4.2 (g) de la LOOEG. Según la OEG, los elementos de este Artículo son que: (1) se trate de un servidor público; (2) que interviene, directa o indirectamente, en cualquier asunto en el que un miembro de su unidad familiar, su pariente, su socio o una persona que comparta su residencia, tenga conflicto de intereses; y, (3) que resulte en la obtención de un beneficio para cualquiera de ellos.

La *Resolución* concluyó que la Sra. Meléndez Cruz era servidora pública para la fecha de los hechos, siendo ella la directora de Finanzas del Municipio de Santa Isabel. Aquel elemento quedó incontrovertido por la prueba presentada por la Querellada. Tampoco quedó controvertido que los dueños de aquellas empresas y las personas con quien se contrataba eran parientes de la Sra. Meléndez Cruz. La OEG estimó probado que:

> [L]a querellada firmó y aprobó 17 documentos titulados "*Hoja de control para la realización de contratos*" y 33 documentos titulados "*Enmienda a contrato*" a favor de sus tres parientes, en relación con los contratos y enmiendas de contratos que incluía el número de partida y los fondos para los desembolsos, para un total de $908,672.75. Así también, la querellada firmó y aprobó 53 órdenes de compra a favor de sus parientes por la cantidad de $840,354.25, de las cuales firmó 20 órdenes como directora de Finanzas y jefa de la dependencia, 8 comprobantes de desembolso por $42,850.00 y 8 cheques a favor de sus parientes por $35,878.17.

---

[209] *Íd*., Anejo XXIV, págs. 533-573.

[...]

La revisión de los documentos lleva a concluir que la querellada, como directora de Finanzas, intervino en los procesos de desembolsos para pagarle a sus parientes y las corporaciones de estos en los servicios de ingeniería, supervisión de obras, finanzas y contabilidad. Estas gestiones, junto al eventual pago por el servicio ofrecido, fueron el beneficio de los tres parientes de la querellada.[210]

La OEG también rechazó como defensa que la Querellada le haya remitido al Alcalde del Municipio una carta el 4 de marzo de 2014 en la que solicitó inhibirse. La OEG estimó que sus actos posteriores, demostraron que no se inhibió pese conocer de su obligación de hacerlo, conforme a la LOOEG. También señaló que la carta remitida a la OEG el 5 de abril de 2017 fue enviada tres (3) años luego de fungir como directora interina de Finanzas, luego de que ella realizara intervenciones con los negocios de sus parientes, y no consta de la carta su firma, método de envío ni información para hacer constar que se haya remitido. No validó la defensa de obediencia jerárquica, puesto que la Ley de Municipios Autónomos, Ley Núm. 81-1991, según enmendada, 21 LPRA sec. 4001 *et seq.*,[211] y el Reglamento Municipal vigente al momento de los hechos permitía que la Querellada delegase aquellas funciones a otro empleado municipal. Tampoco presentó prueba para acreditar que era la única persona autorizada del Municipio para firmar cheques.

Por las razones señaladas, la OEG le impuso a la Sra. Meléndez Cruz una multa de $9,000.00. Inconforme, y tras solicitar infructuosamente la reconsideración de la determinación, el 23 de octubre de 2024, presentó el recurso apelativo ante nuestra consideración. En el mismo, presentó el siguiente señalamiento de error:

**ERROR COMETIDO: LA OFICINA DE ÉTICA GUBERNAMENTAL ERRÓ AL ADOPTAR EL INFORME DE LA OFICIAL EXAMINADORA (LCDA. EVELYN J.**

---

[210] *Íd.*, págs. 571-572.
[211] La Ley de Municipios Autónomos de 1991 fue derogada per estaba vigente al momento de los hechos.

**ALMOD[Ó]VAR P[É]REZ) DEL 30 DE JULIO DE 2024 Y EN EL QUE CONCLUY[Ó] QUE LA QUERELLADA-RECURRENTE HAB[Í]A ACTUADO CONTRARIO A LA LEY, DESCANSANDO PARA ELLO EN DECLARACIONES JURADAS QUE NO CUMPLEN CON LOS CRITERIOS REGLAMENTARIOS Y JURISPRUDENCIALES APLICABLES A LA ADJUDICACIÓN DE UNA CONTROVERSIA COMO ESTA; Y LA PRUEBA PRESENTADA ES VAGA Y CONTRADICTORIA.**

## II.

### A.

El Artículo 4.006 (c) de la Ley de la Judicatura de 2003, Ley Núm. 201-2003, (4 LPRA sec. 24y (c)), faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. Los organismos administrativos merecen la mayor deferencia judicial, puesto que estos tienen el conocimiento especializado sobre los asuntos que les han sido delegados. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012). Al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Íd.* Todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo cual la parte que las impugne debe producir suficiente evidencia para derrotarla. *Íd.*

Las facultades adjudicativas de una agencia están regidas por la LPAU, *supra*, y por la jurisprudencia aplicable. La Sección 3.1 de la LPAU, *Íd.*, requiere que las agencias fundamenten sus resoluciones con determinaciones de hecho y conclusiones de derecho. Estas determinaciones deben reflejar que se consideraron y resolvieron los conflictos de prueba y, además, deben describir tanto los hechos probados como los rechazados. *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 265 (2007). Por lo tanto, la facultad revisora de los tribunales está limitada a determinar: (1) que el remedio

concedido por la agencia fuese el apropiado; (2) si las determinaciones de hecho estuvieron basadas en evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta. LPAU, *supra*, Sec. 4.5.

Sobre nuestra facultad revisora, el Tribunal Supremo ha expresado que:

> **[L]as determinaciones de hecho se deben sostener si se fundamentan en evidencia sustancial que surja de la totalidad del expediente administrativo**. Mientras, la deferencia antes mencionada **no se extiende de manera automática a las conclusiones de derecho** emitidas por la agencia, ya que estas serán revisables en todos sus aspectos por el tribunal. **Esto es, que el tribunal las puede revisar sin sujeción a norma o criterio alguno**.
>
> *Hernández Feliciano v. Mun. Quebradillas, supra*, pág. 115. (citas omitidas) (Énfasis nuestro).

"[L]os foros apelativos debemos diferenciar entre asuntos de interpretación estatutaria, en la que los tribunales son especialistas, y los asuntos propios de la discreción o la pericia administrativa". *Íd.*, pág. 116. Al revisar las determinaciones de hechos, los tribunales solo pueden sustituir su criterio por el de la agencia cuando las determinaciones no están fundamentadas en evidencia sustancial. "Evidencia sustancial es 'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión'". *Empresas Ferrer v. A.R.Pe., supra*, pág. 266 (citando a *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 615 (2006)). La parte que impugne una determinación "tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial". *Otero v. Toyota*, 163 DPR 716, 728 (2005).

Los tribunales les deben menor deferencia a las conclusiones de derecho de las agencias. *Hernández Feliciano v. Mun. Quebradillas, supra*, pág. 115. Aun así, la interpretación judicial del

derecho no constituye una sustitución automática de las conclusiones de derechos de una agencia. *Íd.* En otras palabras, la deferencia disminuida no trata de una revisión *de novo*. El criterio administrativo solo debe ser descartado cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

**B.**

Mediante la LOOEG, *supra*, el Gobierno de Puerto Rico creó la Oficina de Ética Gubernamental, cuya misión es "educar al servidor público para que, en el desempeño de sus funciones, exhiba los valores de bondad, confiabilidad, justicia, responsabilidad, respeto y civismo que rigen la administración pública". *Íd.*, Artículo 2.1 (A). Con los fines de cumplir con su misión, la LOOEG habilitó a la OEG para fiscalizar la conducta de los servidores públicos y penalizar a todos aquellos que transgreden la normativa ética que integra los valores del servicio público. *Íd.* De esta manera, y cónsono con su carácter preventivo, la OEG tiene a su disposición los mecanismos necesarios para hacer cumplir con sus disposiciones y fiscalizar a los servidores públicos. *OEG v. Martínez Giraud*, 210 DPR 79, 92 (2022).

La LOOEG también establece una serie de prohibiciones éticas de carácter general, entre ellas, la prohibición de "intervenir directa o indirectamente, en cualquier asunto en el que un miembro de su unidad familiar, su pariente, su socio o una persona que comparta su residencia, tenga un conflicto de intereses que resulte en la obtención de un beneficio para cualquiera de ellos". *Íd.*, Artículo 4.2 (g). Para demostrar que un servidor público violó el Artículo 4.2 (g), la OEG tiene que demostrar que: (1) trata de un servidor público, según definido por el Artículo 1.2 (gg) de la LOOEG, *Íd.*; (2) que este intervenga, de manera directa o indirecta, en algún

asunto en el que tenga un conflicto de interés; (3) que resulte en la obtención de un beneficio para algún pariente del servidor público. El servidor público que viole el Artículo 4.2 (g) podrá enfrentar una acción administrativa y "ser castigada por la Dirección Ejecutiva con multa administrativa, que no excederá de veinte mil (20,000) dólares por cada violación". *Íd.*, Artículo 4.7 (c).

Para determinar si se ha incurrido en conducta prohibida, la LOOEG establece una serie de definiciones para nuestro beneficio. En primer lugar, el, Artículo 1.2 (gg) define a un "servidor público" como una "persona en el Gobierno que interviene en la formulación e implantación de la política pública o no, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración". *Íd.*, Artículo 1.2 (gg). Un "conflicto de interés" es "aquella situación en la que el interés personal o económico está o puede razonablemente estar en pugna con el interés público". *Íd.*, Artículo 1.2 (n). Un "beneficio" es "cualquier provecho, utilidad, lucro o ganancia, sin limitar el término a una ganancia pecuniaria o material, sino que denota cualquier forma de ventaja". *Íd.*, Artículo 1.2 (i). Finalmente, los "parientes" son "los abuelos, **los padres**, los hijos, los nietos, **los tíos**, **los hermanos**, los sobrinos, los primos hermanos, el cónyuge, los suegros y los cuñados del servidor público, así como los hijos y los nietos de su cónyuge". *Íd.*, Artículo 1.2 (y). (Énfasis nuestro)

Al interpretar el quantum de prueba necesario para encontrar a un servidor responsable en una acción administrativa, nuestro Tribunal Supremo ha resuelto que esta requiere un quantum intermedio, entre medio de la necesaria para prosperar en una acción civil y en una acción criminal. En *OEG v. Martínez Giraud, supra,* el Tribunal determinó que sería necesario probar una violación ética en un foro administrativo con prueba "clara, robusta y convincente". *Íd.*, págs. 93-94. Dicho estándar intermedio se

caracteriza por ser "aquella evidencia que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables". *Íd.*, pág. 94. Al igual que un caso ante los tribunales, los casos administrativos acusatorios mantienen el peso de la prueba sobre la parte que no prosperará sin la presentación de prueba. "[A]quel que busca de un remedio o una sanción en el ámbito administrativo, al igual que en el judicial, tiene que probar su caso. Es decir, tiene que evidenciar, con prueba suficiente en derecho, que sus alegaciones no constituyen meros señalamientos, sino un reclamo cierto y sostenible. Lo contrario, atentaría contra los principios más elementales de la justicia". *Íd.*, pág. 97.

### III.

Tras un análisis completo de la prueba presentada ante el foro administrativo es forzoso concluir que la OEG probó, mediante prueba clara, robusta y convincente, que la Sra. Meléndez Cruz incurrió en la conducta prohibida en el Artículo 4.2 (g) de la LOOEG, *supra*. Como parte de la prueba desfilada, la OEG presentó sendos documentos firmados o autorizados por la Sra. Meléndez Cruz, en su capacidad como directora interina y en propiedad de Finanzas del Municipio de Santa Isabel para el beneficio de sus parientes y las empresas operadas por ellos.

Como hemos resaltado, la Sra. Meléndez Cruz intervino en las relaciones contractuales entre el Municipio de Santa Isabel y las siguientes personas: el Sr. Santos E. Meléndez Cordero, padre de la Querellada y presidente de *SEM Design Group* y *SEM A/E Design*; el Sr. Eduardo E. Meléndez Cruz, hermano de la Querellada y presidente de *EMC Design* y *A/E Design*; y, el Sr. Reinaldo Meléndez Cordero, tío de la Querellada y presidente de *CPA Advisors* y *Financial Advisors*. Además, la Sra. Meléndez Cruz también creó una *Orden de Compra o Servicio* a nombre de *A/E Design*, relacionado con la enmienda al Contrato Núm. 2017-000309 por la cantidad de

$4,696.50, el cual no se perfeccionó, por lo que nunca se cobró. Conjuntamente, ella intervino directamente en ciento veinte (120) ocasiones, lo que resultó en el desembolso de $1,827,755.17 a favor de sus parientes y sus empresas. No cabe duda de que lo señalado constituye un beneficio monetario para los parientes de la Querellada.

Tampoco tenemos duda de que lo mismo constituye un conflicto de interés, según definido por la LOOEG, *supra*. Los parientes de la Sra. Meléndez Cruz recibieron un beneficio económico proveniente del erario del Municipio de Santa Isabel. Existe un claro conflicto de interés en la relación contractual entre ellos y el Municipio, puesto que los parientes tienen un interés económico de cobrar mayores precios y el Municipio uno de reducir gastos. En este sentido, se cumple con el segundo elemento de la acción administrativa.

Finalmente, la Sra. Meléndez Cruz atribuyó su conducta a un mero lapso de juicio y error involuntario. No podemos sostener dicha conclusión. En primer lugar, debemos recordar que estamos ante el manejo y gasto de fondos públicos, y que la Sra. Meléndez Cruz ocupó un puesto municipal de alta responsabilidad y discreción. Su conducta y proceder está revestido del más alto interés público, por lo que este Tribunal ha rechazado el error involuntario como excusa para el manejo inapropiado del erario:

> El olvido, la inadvertencia, que no se percató, un mero descuido, el grado de escolaridad, un error inocente, la inexperiencia y el desconocimiento de la ley son excusas inaceptables para incumplir con el alto grado de responsabilidad que exige el servicio público. La firma del [servidor público] en un documento, es su palabra de que se cumplió con las formalidades de la ley. Nos parece una actitud irresponsable que el [servidor público] trate como inconsecuente el hecho de que firmó un documento a ciegas. La realidad es que firmó sin leer, porque de otro modo se hubiese percatado que era el nombramiento de su [pariente].

KLRA201800328, pág. *8. Panel compuesto por su presidente , el juez Bermúdez Torres, la jueza Grana Martínez (Jueza Ponente) y el juez Sánchez Ramos.

Además, la Sra. Meléndez Cruz estaba consciente de la prohibición contra la intervención directa en los asuntos donde existía un conflicto de interés entre el Municipio y sus parientes, evidenciado por las cartas que le remitió al Alcalde, Sr. Questell Alvarado, y a la Oficina de Ética Gubernamental. No obstante lo anterior, ella continuó interviniendo sin antes recibir una dispensa o solicitar la inhibición. Esto, en conjunto con la cantidad de intervenciones que realizó durante su tiempo como directora de Finanzas, nos convencen de que sus actuaciones no se pueden achacar a meras inadvertencias, lapsos de juicios o errores involuntarios.

Tampoco aceptamos como excusa la obediencia jerárquica. Una lectura sucinta de las funciones de la Sra. Meléndez Cruz demuestran que como directora de Finanzas, la aprobación y firma de los documentos señalados constituía parte de sus labores rutinarias. La Sra. Meléndez Cruz también pudo delegar aquellas funciones a otro empleado municipal o inhibirse. No surge de la prueba presentada que haya habido una presión por parte de su superior para que firmara aquellos documentos.

Al no tener antes nos argumentos o prueba que demuestre alguna razón por la que debemos sustituir nuestro criterio por el utilizado por la OEG, ni controversia sobre hechos materiales, le debemos entera deferencia a la agencia que goza de la *expertise* para atender los asuntos relacionados con la violaciones éticas por parte de los servidores públicos. En consecuencia, confirmamos la determinación recurrida.

**IV.**

Por los fundamentos discutidos, confirmamos la *Resolución* emitida por la OEG.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones